McNEAL v TUORI

Docket No. 45698. Submitted June 3, 1980, at Grand Rapids.—Decided June 16, 1981.

Cecil W. McNeal and Cecil F. McNeal brought an action against Thomas Tuori as administrator of the estate of Neal H. Tuori, deceased, for damages for breach of a contract to purchase real property. Following trial, the court, sitting as the trier of fact, found that defendant breached the contract, that the measure of damages was the difference between the contract price and the market value of the property as of the day of the breach, that plaintiff failed to establish the market value and that thus it was unable to determine damages, that evidence was presented that defendant was aware that plaintiffs were under extreme financial pressure to sell at the time of the breach, and that taxes paid by plaintiffs between the date of the breach and the date of resale but not the broker's commissions on resale were consequential damages and to be recovered by plaintiffs, Muskegon Circuit Court, R. Max Daniels, J. Plaintiffs appeal; defendant cross-appeals. *Held:*

1. The trial court correctly found that the measure of damages was the difference between the contract price and the market value but erred in finding that there was no evidence of market value so as to determine direct damages for the breach.

2. The trial court did not err in determining that plaintiffs' insolvency was not a consequence of defendant's breach.

3. The trial court erred in holding that Michigan law does not allow for recovery of broker's commissions as damages on resale of real property subsequent to a breach of a contract to purchase.

. Affirmed in part, reversed in part, and remanded.

1. Vendor and Purchaser — Damages — Breach of Contract.

Damages incurred by a vendor of real property for breach of a contract to purchase the property where a deed has not been tendered are measured by the difference between the contract

References for Points in Headnotes
[1-4] 67 Am Jur 2d, Sales § 643 *et seq.*
[5] 67 Am Jur 2d, Sales § 694.

price and the market value of the property at the time of the breach.

2. VENDOR AND PURCHASER — DAMAGES — BREACH OF CONTRACT — MARKET VALUE.

A plaintiff in an action for damages for breach of a contract to purchase real property has the burden of proving the market value of the property at the time of breach, and where no evidence of market value is introduced a directed verdict for the defendant properly may be entered; however, where clearly there has been a breach of contract and evidence establishing damages has been introduced, it is the duty of the trier of fact to weigh the evidence and, if possible, make a reasonable determination of damages.

3. VENDOR AND PURCHASER — DAMAGES — MARKET VALUE — BREACH OF CONTRACT.

A plaintiff in an action for damages for breach of a contract to purchase real property need not pinpoint the market value of the property at the exact moment of breach; evidence of the proximity of the contract offer, listing price, or opinion of market value to the time of the breach, the source of such evidence, and resale price may be considered by the trier of fact in determining the market value.

4. VENDOR AND PURCHASER — DAMAGES — MARKET VALUE — BREACH OF CONTRACT.

Determination of the market value of real property in an action for damages for breach of a contract to purchase the property must include consideration of possible market changes due to economic conditions between the breach and subsequent resale unless the sale occurred proximately to the breach; where evidence of the resale price is the only evidence of market value, the plaintiff has the burden of establishing that the resale occurred within a reasonable time, at the highest price obtainable, under terms as favorable as the original contract, and that there has not been a decline in market value.

5. VENDOR AND PURCHASER — DAMAGES — CONSEQUENTIAL DAMAGES — BREACH OF CONTRACT.

Consequential damages for breach of a contract to purchase real property may be recovered in addition to general damages where the damage was foreseeable and was a natural consequence of the breach.

*Collinge, Silky & Kobza,* for plaintiff.

*Parmenter, Forsythe, Rude, Gavigan, Van Epps & Briggs* (by *James R. Seastrom* and *Arthur M. Rude*), for defendant.

Before: R. B. BURNS, P.J., and MacKENZIE and J. T. KALLMAN,* JJ.

MacKENZIE, J. Plaintiffs sued for breach of a real estate contract dated September 2, 1975, pursuant to which defendant's decedent, Neil Tuori (hereinafter "defendant"), agreed to purchase a parcel of real property in Acme Township, Grand Traverse County, Michigan, at a price of $199,379.58,[1] but subsequently refused to perform. Plaintiffs retained possession of the land until March of 1976, when they resold it for $150,000. Damages of $65,230.20 were sought, including: (1) $49,379.58, representing the difference between the contract price and resale price; (2) $15,000, representing a real estate commission paid on resale due to defendant's breach of the initial agreement; and (3) taxes of $315 on the property between the date of the alleged breach of contract and ultimate resale.

Following a bench trial, the circuit judge made the following findings relevant to the questions raised on appeal:

"(1) Defendant breached the contract sometime between September 15, 1975, and October 2, 1975;

"(2) The measure of damages is the difference between the contract price and market value of the land as of the date of breach, *In re Day Estate,* 70 Mich App 242; 245 NW2d 582 (1976), *McColl v Wardowski,* 280 Mich 374; 273 NW 736 (1937);

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The offer of $199,379.58 included $130,000 in cash, debt cancellation for accounting services rendered by defendant amounting to $14,836.62, and cancellation of payments remaining due on another land contract with defendant totalling $54,542.96.

"(3) There was evidence of a prior offer of $180,000 which was rejected by plaintiffs and a subsequent offer of an option to purchase for $225,000 which fell through, evidence that plaintiffs thought that the property was worth $250,000 at the time of contracting, and evidence that plaintiffs were under extreme financial pressure to sell;

"(4) Notwithstanding, 'There is no testimony that the Court recalls by the plaintiff or any other party as to the value of this property during the period of the breach between September 15 and October 2. The Court is therefore only left with the subsequent sale price of $150,000. In considering *In re Day Estate, supra,* as to the measure of damages, the Court cannot find any evidence offered by the plaintiff as to the value of the property as of the date of the breach. The Court would have to speculate as to the value without sufficient testimony or evidence to support the Court's determination. Therefore, it is the opinion of the Court that the plaintiffs have failed to prove the market value of the real estate which was the subject of the agreement, as of the time of the breach, and therefore the Court cannot determine the damages with respect to the breach of contract * * *'; and

"(5) Taxes paid between the date of breach and date of resale in the amount of $315 plus interest on the Eaton-McNeal land contract[2] in the amount of $535.68 for roughly the same time period were determined to be consequential damages and awarded to plaintiffs (plus costs)."

The first issue is whether the trial judge erred in determining that there was no evidence of the market value of the property at the time of breach except for the evidence of the resale price five months later which, standing alone, he considered insufficient to allow him to make a reasonable determination of damages.

The trial judge correctly held that where a deed has not yet been tendered the vendor's damages

---

[2] See footnote 1.

for breach of a purchaser's promise to pay are measured according to the difference between the contract price and the market value of the land at the time of the breach. *Stewart v McLaughlin's Estate,* 126 Mich 1, 7; 85 NW 266 (1901), *McColl, supra,* 376. *In re Day Estate, supra,* 246-247. A plaintiff has the burden of establishing proof of the market value, and a directed verdict in favor of the purchaser is proper if no evidence establishing market price is introduced. *McColl, supra,* 376.

However, where there clearly has been a breach of contract and certain evidence establishing damages has been introduced, although far-ranging, it is the duty of the fact finder to weigh the evidence and, if at all possible, make a reasonable determination of damages.

According to the evidence, the parties entered into a contract on September 2, 1975, whereby defendant agreed to pay $199,379.58 for the parcel of property. Plaintiff Cecil W. McNeal testified that up until the contract date, the property had been listed with Zimmerman & McDonnell, a real estate firm in Traverse City, for $200,000. Prior to September 2, 1975, an offer of $180,000 had been rejected by plaintiffs. Cecil W. McNeal testified that in the fall and winter following the breach, plaintiffs received an offer of a six-month option to purchase for $225,000 which was not accepted due to the necessity of accomplishing a quick sale. Thus, in February of 1976, the property was sold to HABCO, an investment copartnership, for $150,-000. That was the only other offer plaintiffs received. Cecil W. McNeal testified that he thought the property was worth between $200,000 and $250,000 in October of 1975, and that, in his opinion, the market price was appreciating.

Evidence was also admitted tending to show that

plaintiffs were under extreme pressure to sell the property quickly and required most of the consideration in cash because they needed money to prevent foreclosure of their hotel and restaurant. No evidence was introduced by either side tending to show a decline in property values. The deposition of realtor Peter Hoppin of Zimmerman & McDonnell indicated that when the property was relisted the economy was not stable and interested buyers were having a difficult time raising the amount of cash required to purchase the property. Hoppin also stated that the listing price of $180,000 was very close to what plaintiffs would have gotten on the market in February, 1976. Hoppin testified that there was not a large turnover of pieces of property of this size and that it often took time to sell such a parcel. Hoppin, who was also a partner in HABCO, testified that in May of 1976, HABCO received an offer of $215,000 on the property, the financing of which fell through. Hoppin testified that he estimated that the property was worth $215,000 in May of 1976.

Testimony regarding offers to purchase the property and amounts for which the property was listed during the period of several months before and several months after the breach, plaintiff's testimony of his belief as to the worth of the property, and the realtor's testimony of his assessment of the property's worth were all *some* evidence of the market value of the property. The absence of a specific statement of the property's worth during the precise two-week period in which the breach occurred did not preclude the trial judge from considering the foregoing evidence. A plaintiff is not required to pinpoint the market value at the exact moment of the breach. Here, such a requirement would be impossible since the

moment of breach was determined by the fact finder subsequent to the actual trial.

Where there is some evidence of the market value of the property around the time of the breach, the fact finder should weigh all the evidence in an effort to make a reasonable determination of market value and, hence, damages. In weighing such evidence, the proximity of a particular offer, listing, or opinion of market value to the time of the breach is a factor to be weighed. The source of the evidence is also to be considered in assessing its weight.

Evidence of resale price may be considered as some evidence of market value. *Royer v Carter,* 37 Cal 2d 544; 233 P2d 539 (1951), *In re Day Estate, supra.* Unless resale occurred in proximity to the actual breach, the trial court must consider possible market changes due to intervening economic conditions. *In re Day Estate, supra.* Further, where evidence of resale price is the only evidence of market value, the plaintiff has the burden of establishing that resale occurred within a reasonable time, at the highest price obtainable, under terms as favorable as the original contract, and that there has not been a decline in market value. *Royer, supra.* We cannot say that the trial judge abused his discretion in holding that plaintiffs did not establish that they sold the property for the highest price obtainable and that there were no intervening economic conditions affecting market value in the five-month interim.

However, in the case at bar, there was evidence of market value in addition to the resale price. From a reading of the trial judge's opinion, we cannot ascertain whether he considered all the evidence or felt that he was precluded from doing so because there was no specific evidence of mar-

ket value during the two-week period of the breach. The case must, therefore, be remanded for reconsideration and specific findings of fact in light of this opinion. Like the court in *Rogers v Lion Transfer & Storage Co,* 120 US App DC 186, 187; 345 F2d 80 (1965), we intimate no view regarding the conclusion to be drawn by the circuit court after weighing all the evidence, that is, the trial judge must still determine which, if any, evidence is credible in establishing market value, whether the market value of the property at the time of breach exceeded, equalled, or fell short of the contract price.

Plaintiffs next contend that, even if the court determines that the market price at the time of breach exceeded the contract price, plaintiffs are, nonetheless, entitled to recover the difference between market value and resale price as "consequential damages". Plaintiffs argue that defendant, as their accountant, entered into the contract with the knowledge that plaintiffs were in dire financial straits and had to sell the property as soon as possible to raise cash. Thus, argue plaintiffs, it was reasonably foreseeable that defendant's breach would force plaintiffs to sell the property as quickly as possible and hence, suffer a loss by not being able to wait for the best offer.

We find plaintiffs' claimed losses are neither direct nor consequential damages of the breach. Initially, we note that in plaintiffs' complaint plaintiffs averred that they were directly damaged by defendant's breach in the amount of $49,379.58, the difference between the contract price and the resale price. Plaintiffs did not allege that this amount represented special damages suffered as an indirect consequence of defendant's breach. We have already held that, absent proof that resale price was substantially equal to market value at

the time of breach, direct damages for the difference between resale price and contract price are not recoverable. Thus, it seems that plaintiffs are attempting to recoup the difference between the contract price and resale price merely by labelling the sum "consequential damages".

In 22 Am Jur 2d, Damages, § 56, p 88, the authors state that the English case, *Hadley v Baxendale,* decided in 1854,[3] sets forth two rules regarding recovery of direct and consequential damages for breach of contract:

"(1) [W]here there are no special circumstances to distinguish the contract involved from the great mass of contracts of the same kind, the damages recoverable are such as would naturally and generally result from the breach according to the usual course of things, and (2) where there are special circumstances in the contract, damages which result in consequence of those special circumstances are recoverable if, and only if, those special circumstances were communicated to or known by both parties to the contract at the time they entered into the contract. The second rule as above stated is sufficient to cover all cases of breach of contract, for it must be presumed that the parties would have contemplated that the party injured by the breach of the contract would sustain such damages as would fairly and substantially, in the usual course of things, result from such breach." (Footnotes omitted.)

In *Clark v Ferro Corp,* 237 F Supp 230, 239 (ED Tenn, 1964), the court further explained the term:

"The term 'consequential damages' has been defined as follows in 25 CJS, Damages, § 2.

" '*Consequential damages.* Consequential damages are such as are not produced without the concurrence of some other event attributable to the same origin or

---

[3] 9 Exch 341; 156 Eng Rep 145.

cause. The term may include damage which is so remote as not to be actionable. It has also been defined as synonymous with the term "special damages" '."

In *Hycel, Inc v American Airlines, Inc,* 328 F Supp 190, 194 (D Tex, 1971), the court reasoned that:

"[W]hat amounts to consequential damages is largely dependent on the circumstances of each case—the circumstances which should charge the wrongdoing party with constructive knowledge that the resulting injury would be a consequence of his wrongful act—and is essentially a question of fact."

Inherent in each definition is the notion that to be recoverable the injury not only must be foreseeable but somehow must be a consequence of the breach. In the case at bar, plaintiffs' precarious financial position was extant prior to the time the contract was entered into. In fact, the record indicates that plaintiffs sold the property to defendant to alleviate their insolvency. Thus, even though defendant knew of plaintiffs' precarious financial position, we cannot say that the trial judge erred in determining that plaintiffs' insolvency was not a consequence of defendant's breach.

The next question is whether the trial court erred in failing to award $15,000, which plaintiffs were required to pay as the real estate broker's commission on resale, as consequential damages. The only relevant Michigan authority on this question is the general definition of consequential damages in *In re Day Estate, supra.* The law of other states differs as to the treatment of broker's commissions. We favor the rule set forth by Justice Traynor of the California Supreme Court in *Royer, supra.* Justice Traynor reasoned that ordi-

narily in real estate transactions the seller absorbs the cost of paying the broker's commission on the sale. Thus, if plaintiff seller is required to pay a second commission on resale due to the buyer's breach, the seller, already having recovered the commission paid for the initial sale as part of the direct damages awarded for the breach, should not be allowed to recover the amount of the second commission as consequential damages. As Justice Traynor explains, this rule is not without exception:

"In many cases, however, the vendee's breach may make it necessary for the vendor to incur additional expenses to realize the benefit of the bargain. Given the rule that the value of the property to the seller under section 3307 is ordinarily the market value at the time of the breach (*Employees' Participating Ass'n v Pine*, 91 Cal App 2d 299, 301 [204 P2d 965] and cases cited), injustice could result if the vendor were not allowed to recover damages for additional expenses caused him by the vendee's breach. Thus in a case where the property is sold at the market value and that value remains constant until after the breach, and the property is then resold at the same price, the vendor could recover no damages under section 3307. He would be forced to pay, however, in addition to the expenses of the first sale, the expenses of the resale. When such additional expenses are the natural consequence of the breach, they may be recovered in addition to those provided for in section 3307." *Id.*, 550.

Justice Traynor concluded that, in the example he cited, the seller could recover the difference between the amount of a broker's fee on the market price at the time of breach and the amount by which the anticipated expenses of the first sale were reduced by the buyer's default.

Applying that logic to the circumstances herein, we initially note that there was no broker's com-

mission on the first sale which was negotiated by the parties themselves; thus, by virtue of defendant's breach, plaintiff was obliged to pay an additional expense of $15,000, the broker's commission on resale. Under these circumstances, even if general damages are awarded plaintiffs for the breach of contract, the damages would not include the broker's fee on resale. It is for the trial judge to determine whether, from defendant's standpoint, it was reasonably foreseeable that his breach of the contract would cause plaintiffs to incur additional expenses including real estate commission to resell the property. In deciding this issue, the trial court should consider the evidence that plaintiffs first attempted to resell the property themselves without success, that the size of the lot, its intended use for development as a resort hotel site or for investment purposes, that difficulty of obtaining financing limited the number of available buyers, and that plaintiffs lived some distance from the property, limiting their own ability to show it and sell it to interested parties. If the trial judge finds that the broker's fee was reasonably foreseeable, the court should award the amount of the fee which plaintiffs proved as consequential damages.

The portion of the trial judge's judgment and opinion holding that (1) there was no evidence of market value such that direct damages for defendant's breach were not ascertainable and (2) Michigan law does not allow for recovery of broker's commissions on resale are reversed and the case remanded for reconsideration in light of our opinion and for specific findings of fact.

Reversed in part and remanded.