*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD M. WARD, LINDA K. WARD, and
WARD ENTERPRISES, INC.,

UNPUBLISHED
September 17, 2019

Plaintiffs-Appellees,

v

No. 340707
Genesee Circuit Court
LC No. 13-100022-CZ

MICHAEL WESLEY FILARSKI,

Defendant-Appellant,

and

TROY WOOLLEY,

Defendant.

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant, Michael Wesley Filarski, appeals as of right the trial court judgment awarding damages, including attorney fees, to plaintiffs, Richard M. Ward (Richard), Linda K. Ward (Linda), and Ward Enterprises, Inc., based on the trial court grant of summary disposition to plaintiffs on the issue of liability, in this dispute over the sale of land.[1] For the reasons that follow, we affirm the trial court judgment, in part, regarding the grant of summary disposition to plaintiffs and the amount of attorney fees awarded to plaintiffs, but we reverse the trial court judgment, in part, with regard to the total amount of damages awarded based on the improper value of the plaza used to calculate the total net judgment.

---

[1] Plaintiffs' claims against defendant Troy Woolley were settled in bankruptcy proceedings, and he is not a party to this appeal.

-1-

# I. FACTS AND PROCEDURAL HISTORY

In April 2011, plaintiffs entered a purchase agreement with defendant and Troy Woolley for the sale of property containing a small plaza (the plaza parcel), and the sale of adjoining property containing a restaurant (the restaurant parcel). The purchase agreement was executed contemporaneously with a land contract for the plaza parcel, a land contract for the restaurant parcel, and a management agreement that allowed defendant and Woolley to operate the restaurant before Ward Enterprises transferred its liquor license.

In March 2013, plaintiffs filed a complaint, alleging breach of the plaza land contract because defendant and Woolley failed to make monthly principal, interest, and debt servicing payments. In their answer to the complaint, defendant and Woolley asserted that the plaza land contract was void because Richard and Linda lacked capacity to enter the contract in their individual capacities because they had quitclaimed their interest in the plaza parcel to Ward Enterprises in 2006.

In May 2013, Richard and Linda assigned their rights and obligations under the plaza land contract to Ward Enterprises. All of the parties then filed motions for summary disposition under MCR 2.116(C)(10). The court granted summary disposition to plaintiffs regarding liability, and denied defendant and Woolley summary disposition. Thereafter, Woolley filed a petition for Chapter 13 bankruptcy, and plaintiffs' claims against Woolley were resolved by bankruptcy court order. The bankruptcy court separated the plaza land contract and the restaurant land contract into two claims, and allowed Woolley to assume the restaurant land contract, and reject the plaza land contract.

The court then held a bench trial on the issue of damages for breach of the plaza land contract. The court entered judgment in favor of plaintiffs in the amount of $245,101.39. This included the balance owed under the plaza land contract ($250,304.34), and attorney fees and costs accrued by plaintiffs' previous counsel ($41,218.80) and plaintiffs' current counsel ($16,578.25), totaling $308,101.39, minus the value of the plaza per the 2016 sheriff's deed and appraisal ($63,000).

# II. ANALYSIS

## A. SUMMARY DISPOSITION

Defendant first argues that the trial court erred in granting plaintiffs summary disposition because genuine issues of material fact exist regarding defendant and Woolley's liability on plaintiffs' breach-of-contract claim.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim," and granting the motion is appropriate when there is no genuine issue concerning any material fact. *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 720; 635 NW2d 52 (2001). When deciding a motion for summary disposition under MCR 2.116(C)(10), this Court must consider all pleadings, affidavits, depositions, and other documentary evidence in the light most favorable to the nonmoving party. *Cowles v Bank West*,

476 Mich 1, 32; 719 NW2d 94 (2006). "Whether a statute of frauds bars enforcement of a contract is a question of law that we review de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 458; 733 NW2d 766 (2006). The interpretation of a contract is also a question of law reviewed de novo. *Id*. at 452.

Defendant first argues that plaintiffs' breach-of-contract claim was barred by the applicable statute of frauds. Specifically, defendant argues that Richard and Linda had no interest in the plaza property to sell. Defendant also argues that the subsequent assignment and assumption agreement was void because Richard and Linda had no interest in the plaza property to assign.

In *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999), this Court defined a land contract:

> The term "land contract" is commonly used in Michigan as particularly referring to "agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." 1 Cameron, Michigan Real Property Law (2d ed), § 16.1, p 582.

Under a land contract, the "vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v American Acceptance Mtg Corp (On Rehearing)*, 469 Mich 608, 614; 677 NW2d 829 (2004). Equitable title only passes to the vendee upon proper execution of the land contract. *Zurcher*, 238 Mich App at 291.

The sale of land is governed by the statute of frauds, MCL 566.106 and MCL 566.108. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 524; 644 NW2d 765 (2002). MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding [one] year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 provides, in relevant part:

> Every contract for the leasing for a longer period than [one] year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

Thus, to satisfy a challenge under the statute of frauds, a contract for the sale of land must: "(1) be in writing and (2) be signed by the seller or someone lawfully authorized by the seller in writing." *Zurcher*, 238 Mich App at 277.

"The *substance* of a binding contract for the sale of land is a subject separate from its sufficiency under the statute of frauds and one that is governed by" general contract law. *Id*. at 279. Defendant's challenge is made under the statute of frauds. The statute of frauds requires that the writing sufficiently set forth the essential terms of the agreement and render the contract enforceable. *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 369; 320 NW2d 836 (1982).[2] There is no dispute that the plaza land contract set forth the essential terms of the agreement. The plaza land contract identified Richard and Linda as the sellers of the real property. Both Richard and Linda signed the land contract. Sufficient writings existed to satisfy the statute of frauds.[3]

Defendant also argues that the plaza land contract, when read in conjunction with the purchase agreement, is ambiguous and, therefore, summary disposition of the breach-of-contract claim was improper.

This Court's "primary goal in interpreting any contract is to give effect to the parties' intentions at the time they entered into the contract." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016). The parties' intent is determined "by interpreting the language of the contract according to its plain and ordinary meaning." *Id*. at 85-86. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "A contract is ambiguous if its words may reasonably be understood in different ways." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998) (quotation marks and citation omitted).

Defendant first argues that an ambiguity existed because the plaza land contract stated that the purchase price for the plaza parcel was $215,000, but the purchase agreement indicated that the purchase price for the real estate, which was defined in the purchase agreement as both the plaza parcel and the restaurant parcel, was $115,000. He maintains that "it is impossible to reconcile the plaza land contract with the purchase agreement."

Plaintiffs' claim for breach of contract related to the plaza land contract. The plaza land contract clearly stated that "full consideration for the sale of the above described premises to the

---

[2] Although this Court is not required to follow cases issued before November 1, 1990, MCR 7.215(B)(4), published decisions have precedential effect under the rule of stare decisis, MCR 7.215(C)(2).

[3] To the extent that defendant is arguing that the plaza land contract was not valid because Ward Enterprises was not a party to the land contract, the record reveals that Ward Enterprises assumed the rights and obligations under the plaza land contract.

Purchasers is Two Hundred Fifteen Thousand and no/100 ($215,000) Dollars." There is nothing ambiguous about the purchase price in the plaza land contract. Indeed, both defendant and Woolley testified that the purchase price of the plaza parcel was $215,000.

Defendant also argues that the plaza land contract was ambiguous because a number of items set forth in the purchase agreement that related to "closing matters" never occurred. Defendant's argument, which is difficult to discern, pertains to the purchase agreement. He has not pointed out any ambiguity within the plaza land contract.

Lastly, defendant argues that Linda and Richard made fraudulent representations to defendant and Woolley to induce them into entering into the plaza land contract, thereby rendering the contract voidable, so defendant and Woolley chose to void the plaza land contract. Defendant raised the affirmative defenses of "fraud-actual and/or constructive," misrepresentation of material facts, "including but not limited to ownership, tenants' status and rental income," and "misrepresentation of the rental income and the status of the tenants on April 12, 2011." Although defendant did not raise fraudulent misrepresentation in his motion for summary disposition or in response to plaintiffs' motion for summary disposition, defendant recited some of the above facts in the statement of the facts sections of his motion for summary disposition and his response to plaintiffs' motion for summary disposition. Defendant did argue at the hearing on the cross-motions for summary disposition that plaintiffs' attorney misrepresented to them that they needed to sign the plaza land contract to have the liquor license transferred to defendant, but did so in the context of arguing that defendant and Woolley did not intend to sign the land contract and be bound by its terms at the time they signed the purchase agreement. This argument is not properly preserved. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 182-183; 521 NW2d 499 (1994) (an issue is preserved if it is raised in the lower court and pursued on appeal). An unpreserved nonconstitutional claim of error is reviewed for plain error affecting substantial rights. *Veltman v Detroit Edison Co*, 261 Mich App 685, 690; 683 NW2d 707 (2004).

The essential elements of a fraudulent misrepresentation claim are as follows:

"(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." [*M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (citations omitted).]

Further, an action for fraud must be predicated upon a false statement relating to a past or existing fact; promises regarding the future are contractual and will not support a claim of fraud. *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). Additionally, to establish a claim of fraudulent misrepresentation, the plaintiff must have reasonably relied on the false representation. *Nieves v Bell Industries, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994). "There can be no fraud where a person has the means to determine that a representation is not true." *Id*.

Defendant is asserting fraud as a defense to plaintiffs' breach-of-contract action. He first argues that plaintiffs' attorney falsely represented to Woolley that all four documents—the purchase agreement, the two land contracts, and the management agreement—needed to be signed so that the liquor license could transfer, and that the false representation was intended by the attorney to induce defendant and Woolley to sign the four documents. However, defendant had the means to determine whether the representation was true. This allegation of fraud is without merit. *Id*. at 464.

Next, defendant argues that Linda falsely represented to Woolley that the liquor license transfer would take only one week when, in fact, it took several months. Again, defendant had the means to determine whether the representation was true. Further, an action for fraud must be predicated upon a false statement relating to a past or existing fact. *Hi-Way Motor Co*, 398 Mich at 336. Any representation regarding the amount of time that it might take for the Michigan Liquor Control Commission to process the transfer of the liquor license was not a statement relating to a past or existing fact.

Means also existed for defendant to determine whether Linda falsely represented that there were several tenants in the plaza parcel with current and active leases, and that the lease payments would cover the payment for the plaza land contract and the property taxes. Woolley admitted that he failed to speak to any of the tenants before signing the land contract, he did "nothing" to determine whether the leases were active and current, he proceeded with signing the land contract despite his claim that he did not receive all of the documentation related to the tenants, and that even after signing the land contract, he failed to speak with the tenants. Defendant testified that he never asked plaintiffs about the terms of the tenant leases, he never asked plaintiffs about the tenants before signing the plaza land contract, he was not aware of any documents related to the tenants that he or Woolley asked for but did not receive, he never spoke with any of the tenants before signing the land contract, he failed to look at any financial information for the plaza parcel before signing the land contract, and it was merely a "bad business decision" to purchase the plaza parcel. Additionally, defendant's allegation with respect to Linda's representation that the tenants' rent would cover defendant's monthly payment on the plaza land contract does not pertain to an allegedly false statement relating to a past or existing fact, and does not support a claim of fraud. *Id*.

Lastly, defendant alleges that Linda falsely represented to Woolley that she intended to purchase one of the businesses in the plaza after she learned that the business would be vacating the plaza. Again, this allegation does not pertain to an allegedly false statement relating to a past or existing fact, and does not support a claim of fraud. *Id*.

In sum, defendant has failed to create a genuine issue of material fact with respect to his claim that the plaza land contract was void. Therefore, summary disposition in favor of plaintiffs was proper.

## B. DAMAGES AND ATTORNEY FEES

Defendant next argues on appeal that should this Court affirm summary disposition in plaintiffs' favor, the trial court erred in its calculation of damages against him.

This Court reviews for clear error a trial court's factual findings, including the calculation of damages. See *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

The parties agree that the proper measure of damages in an action for breach of a land contract, where the seller did not tender the deed to the purchaser, as in this case, is the difference between the amount due on the land contract and the value of the property at the time of the breach. See *McColl v Wardowski*, 280 Mich 374, 376; 273 NW 736 (1937); *St John v Richard*, 272 Mich 670, 675; 262 NW 437 (1935). "[W]here a vendor seeks to recover damages from the vendee pursuant to a contract for the transfer of real property, the measure of damages is the difference between the contract price and the market value of the land." *In re Day Estate*, 70 Mich App 242, 246; 245 NW2d 582 (1976), citing Calamarai and Perillo, Contracts, § 231, p 365. Market value means the market value as of the date of the breach as opposed to the price the vendor later obtained on resale. *Id*. at 246-247. "Where there is some evidence of the market value of the property around the time of the breach, the fact finder should weigh all the evidence in an effort to make a reasonable determination of market value and, hence, damages." *McNeal v Tuori*, 107 Mich App 141, 147; 309 NW2d 588 (1981). However, if "evidence of resale price is the only evidence of market value, the plaintiff has the burden of establishing that resale occurred within a reasonable time, at the highest price obtainable, under terms as favorable as the original contract, and that there has not been a decline in market value." *Id*.

In *In re Day Estate*, 70 Mich App at 242, the defendants executed an offer to purchase real estate, and subsequently signed a land contract for the purchase of the real estate on May 15, 1973. *Id*. at 243. On June 8, 1973, the defendants informed the real estate broker that they did not intend to proceed with the purchase of the home. *Id*. at 244. Over a year later, on August 15, 1974, the home was sold for $40,000. *Id*. The plaintiff filed an action seeking to have the defendants held liable for the $10,000 difference between the contract price and the subsequent sale price, among other things. *Id*. The trial court found that the plaintiff had not failed to mitigate his damages, and was entitled to judgment against the defendants in the sum of $16,526.56, which included the $10,000 difference between the contract price and the subsequent sale price. *Id*. at 245. This Court found that the trial court erred in its calculation and its awarding of damages. *Id*. at 246. Specifically, this Court opined as follows:

> In the case at bar the trial judge apparently adopted the plaintiff's calculations of damages which included the $10,000 difference between the contract price and the sale price of the property approximately one year after the breach, as well as consequential damages involving the maintenance of the property for the interim period. We hold that the trial judge properly considered consequential damages such as were incurred in the maintenance of the property since these damages were reasonably foreseeable as a consequence of the breach. The record is not clear, however, concerning whether the trial judge found as a fact that the difference between the fair market value and the contract price at the time of the breach was or was not $10,000. If the trial judge merely assessed damages for the difference in the sale price and the contract price, he was in error. The judge may properly consider a sale price, albeit one year later, as some evidence of the fair market value at the time of breach, but he would be required to take into account

possible differences in the market as might be occasioned by intervening economic conditions. We are thus required to remand for further proceedings wherein the trial judge shall make findings of fact in support of his assessment of damages. The damages in the case at bar shall consist of the difference between the fair market value of the property at the time of the breach and the contract price as well as consequential damages reasonably foreseeable by the parties at that time. [*Id*. at 247.]

Similarly, the trial court adopted plaintiffs' calculation of damages, which incorporated the amortization schedule provided in the testimony of Scott Fraim, an attorney specializing in business-related matters. Plaintiffs' calculation of damages made no mention of the date that the contract was allegedly breached. However, the amortization schedule applied the default interest rate of 6.5% as of June 1, 2011, which suggests that a breach of the contract occurred as of that date.[4] Further, plaintiffs alleged in their complaint that the plaza land contract required defendant to pay $1,744 per month commencing June 1, 2011, and that defendant had not made the payments. Accordingly, the record suggests that plaintiffs were seeking damages for a breach of contract that occurred on June 1, 2011, and the parties agreed at oral argument that this was when the breach occurred.

The trial court did not, however, specifically make findings regarding when the breach occurred. Further, Fraim's calculation merely calculated the difference between the balance owed under the contract "as of August 16, 2016," and the sale price of the property at a foreclosure sale on May 25, 2016. Fraim did not utilize the contract price in determining damages, but rather, utilized the contract price as a starting point in his amortization schedule. Fraim then subtracted the sale price of the property nearly five years after the breach from the "balanced owed under the contract." Thus, it appears that the trial court, by adopting Fraim's calculations, did not utilize the appropriate measure of damages—that is, the difference between the contract price and the market value of the land at the time of the breach. Nor did the court appear to take into consideration the evidence presented to establish fair market value at the time of the breach.

While the court may properly consider a sale price as some evidence of the fair market value at the time of breach, there is no indication that the court took into account the passage of five years, or the evidence of intervening economic conditions, loss of tenants, and the fact that the sale occurred in the context of a foreclosure proceeding. Because the court failed to use the appropriate measure of damages, and failed to make findings of fact in support of its assessment of damages, the judgment of damages is reversed in part, and the case is remanded for a proper

---

[4] Fraim's amortization schedule calculated the amount due monthly, beginning with the loan amount of $215,000 on April 12, 2011; the schedule credited all payments on the restaurant land contract over $1,000 and rent received, and debited taxes and insurance paid by plaintiffs on behalf of defendant, and included interest at the nominal annual rate of 6.5%. The calculations were made through August 16, 2016, when Fraim applied an overpayment on the restaurant land contract to the plaza land contract.

calculation of damages. The damages should consist of the difference between the fair market value of the property at the time of the breach and the contract price, as well as consequential damages reasonably foreseeable by the parties at that time.

Defendant also argues that the trial court erred in its award of attorney fees and costs. Specifically, defendant argues that the trial court awarded the total amount of fees and costs sought by plaintiffs without any inquiry or findings of fact with respect to whether the fees were reasonable in light of the services rendered. Plaintiffs maintain that the statements that they submitted from their prior and current counsel detailing the time and costs incurred relating to this matter were sufficient for the court to determine an award of attorney fees and costs without an evidentiary hearing.

This Court reviews for an abuse of discretion a trial court's award of attorney fees and costs. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

"As a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception." *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). Attorney fees are recoverable if expressly provided for by a contract between the parties. *Id*. In this case, the purchase agreement constituted a contract between the parties. Under ¶ 12.1 of the purchase agreement, "In the event of default in any respect of this Agreement . . . , all actual attorney fees and costs incurred by the Sellers in enforcing its terms or pursuing damages shall be paid by the Purchasers."

We note that defendant fails to cite any authority indicating that Michigan courts should construe contract language providing for the recovery of "actual attorney fees" to mean "reasonable attorney fees." Where a contract merely provides for the recovery of "attorney fees" or "legal fees," without more, this language is construed to mean reasonable attorney fees. See *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195-196; 555 NW2d 733 (1996); *Papo v Aglo Restaurants of San Jose, Inc*, 149 Mich App 285, 299; 386 NW2d 177 (1986). However, where, as here, the plain language of the contract unambiguously provides for the recovery of "actual attorney fees," this contract language must be enforced as written. *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003).

Plaintiffs attached to their proposed judgment copies of the billing statements from their former and current counsel for the months of June 2016 through November 2016. Plaintiffs sought $41,218.80 in attorney fees and costs for their former counsel, and $16,578.25 in attorney fees and costs for their current counsel. In its written judgment, the trial court adopted plaintiffs' "determination of damages," including these exact amounts. Defendant argues on appeal that the trial court erred in accepting the figures that plaintiffs submitted, and found "plaintiffs' submission to be correct," without making findings to determine whether the costs were reasonable. However, because the purchase agreement explicitly provided for the award of "all actual attorney fees and costs incurred by the Sellers," the court was not required to make findings regarding reasonableness, and did not abuse its discretion in making this award. Therefore, the judgment granting plaintiffs damages is affirmed, in part, in regard to the amount awarded to plaintiffs in attorney fees.

## III. CONCLUSION

The trial court judgment is affirmed, in part, to the extent that it grants plaintiffs summary disposition and denies defendant summary disposition, and the amount of actual attorney fees awarded is affirmed. The trial court judgment is reversed, in part, regarding the value of the plaza used to calculate the total net judgment, and this matter is remanded for further proceedings regarding the correct amount of damages to be awarded plaintiffs. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood